IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

```
SACRAMENTO NONPROFIT COLLECTIVE,   )
dba EL CAMINO WELLNESS CENTER, a   )   2:11-cv-02939-GEB-EFB
mutual benefit non-profit          )
collective; RYAN LANDERS, an       )
individual,                        )   ORDER GRANTING DEFENDANTS'
                                   )   DISMISSAL MOTION*
                Plaintiffs,        )
                                   )
          v.                       )
                                   )
ERIC HOLDER, Attorney General of   )
the United States; MICHELLE        )
LEONHART, Administrator of the     )
Drug Enforcement Administration;   )
BENJAMIN B. WAGNER, U.S.           )
Attorney for the Eastern           )
District of California,            )
                                   )
                Defendants.        )
_____  )
```

       The federal defendants, Attorney General of the United States Eric Holder, Administrator of the Drug Enforcement Administration Michelle Leonhart, and the United States Attorney for the Eastern District of California Benjamin Wagner ("Defendants") move for dismissal of Plaintiffs' Complaint under Federal Rule of Civil Procedure ("Rule") 12(b)(6). Defendants argue their motion should be granted since the majority of Plaintiffs' claims have already been rejected by the United

---

    * This matter is deemed suitable for decision without oral argument. E.D. Cal. R. 230(g).

1

States Supreme Court and the Ninth Circuit, and the remaining claims are not actionable. Plaintiffs oppose the motion.

### I. 12(b)(6) Standard

Decision on Defendants' Rule 12(b)(6) motion requires determination of "whether the complaint's factual allegations, together with all reasonable inferences, state a plausible claim for relief." Cafasso, U.S. ex rel. v. Gen. Dynamics C4 Sys., 637 F.3d 1047, 1054 (9th Cir. 2011) (citing Ashcroft v. Iqbal, 556 U.S. 662, 129 S. Ct. 1937, 1949-50 (2009)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Iqbal, 129 S. Ct. at 1949 (citing Bell Atl. Corp. v. Twombly, 550 U.S. 544, 556 (2007)).

When determining the sufficiency of a claim, "[w]e accept factual allegations in the complaint as true and construe the pleadings in the light most favorable to the non-moving party[; however, this tenet does not apply to] . . . legal conclusions . . . cast in the form of factual allegations." Fayer v. Vaughn, 649 F.3d 1061, 1064 (9th Cir. 2011) (internal quotation marks and citations omitted). "Therefore, conclusory allegations of law and unwarranted inferences are insufficient to defeat a motion to dismiss." Id. (internal quotation marks and citation omitted).

### II. Requests for Judicial Notice

Defendants include in their motion a request that judicial notice be taken of the criminal indictments and related court documents filed in United States v. Bartkowicz, No. 1:10-cr-00118-PAB (D. Colo. May 5, 2010), and United States v. Do, No. 1:11-cr-00422-REB (D. Colo. Oct. 13, 2011), which are attached to the motion as Exhibits D and E.

Judicial notice may be taken "of court filings and other matters of public record[;]" therefore, this request is granted. <u>Reyn's Pasta Bella, LLC v. Visa USA, Inc.</u>, 442 F.3d 741, 746 n.6 (9th Cir. 2006). Defendants also request that judicial notice be taken of three judicial opinions from other district courts in California. (Defs.' Mot. to Dismiss ("Mot.") Exs. A-C.) "The court does not need to judicially notice the[se] opinion[s] to consider [them]." <u>Thompson v. Residential Credit Solutions, Inc.</u>, No. CIV. 2:11-2261 WBS DAD, 2012 WL 260357, at *2 (E.D. Cal. Jan. 26, 2012).

Plaintiffs request that judicial notice be taken of a joint stipulation of dismissal and an attachment thereto, which were filed in an unrelated case, <u>County of Santa Cruz v. Ashcroft</u>, No. CV-09-2386-JF (N.D. Cal. Jan. 25, 2010) ("<u>Santa Cruz</u> action"). (Pls.' Request for Judicial Notice ("RJN") Ex. 1; Compl. Ex. 3.) The document attached to the stipulation of dismissal is a memorandum issued by Deputy Attorney General David W. Ogden ("the Ogden Memo") dated October 19, 2009, which states that it "provides clarification and guidance to federal prosecutors in States that have enacted laws authorizing the medical use of marijuana." (Ogden Memo at 1, Pls.' RJN Ex. 1; Pls.' Compl. Ex. 3.) Plaintiffs attached these documents to both their Complaint and their request for judicial notice. Since "[a court] may . . . consider materials that are submitted with and attached to the Complaint" in reviewing a 12(b)(6) motion, these documents are considered. <u>United States v. Corinthian Colleges</u>, 655 F.3d 984, 999 (9th Cir. 2011).

Plaintiffs also request that judicial notice be taken of the transcript of proceedings from the October 30, 2009 hearing in the <u>Santa Cruz</u> action, since Plaintiffs' judicial estoppel claim relies on statements made by the Department of Justice at that hearing. (Pls.'s

3

RJN Ex. 2.) "A court may consider evidence on which the complaint necessarily relies if: (1) the complaint refers to the document; (2) the document is central to [Plaintiffs'] claim; and (3) no party questions the authenticity of the copy attached to the 12(b)(6) motion. The court may treat such a document as part of the complaint, and thus may assume that its contents are true for purposes of a motion to dismiss under Rule 12(b)(6)." Marder v. Lopez, 450 F.3d 445, 448 (9th Cir. 2006) (internal quotation marks and citations omitted). Since the transcript satisfies these criteria, it will be considered.

Plaintiffs also seek judicial notice of the following documents attached to their request for judicial notice: Declaration of Rick Doblin in Support of Plaintiffs' Petition for Temporary Restraining Order/Preliminary Injunction in Conejo Wellness Center Cooperative, Inc. v. Holder, No. CV11-9200 DMG (PJWx) (C.D. Cal. Nov. 8, 2011) (Exhibit 3); three online news articles discussing the use of marijuana for medical purposes (Exhibits 4, 5 & 8); Declaration of Paul Armentano in Support of Plaintiffs' Petition for Temporary Restraining Order/Preliminary Injunction in Marin Alliance for Medical Marijuana v. Holder, No. CV 11-5349 DMR (N.D. Cal. Nov. 8, 2011) (Exhibit 6); Declaration of Lester Grinspoon, M.D. in Support of the Brief of the Nat'l Org. for the Reform of Marijuana Laws, et al. as *Amici Curiae* Supporting Respondents, at App. B, Gonzales v. Raich, 545 U.S. 1 (2005) (No. 03-1454) (Exhibit 7); Cannabinoids as Antioxidants and Neuroprotectants, U.S. Patent No. 6,630,507 (filed Oct. 7, 2003) (Exhibit 9); and a print-out from the National Institute on Drug Abuse website providing information on marijuana, printed January 5, 2012 (Exhibit 10). Plaintiffs do not refer to these documents in their Complaint and do not explain how the evidence contained in these

4

1  documents is central to their claims. Marder, 450 F.3d at 448.
2  Therefore, "[these documents] cannot be considered in resolving whether
3  [Plaintiffs] state [claims] upon which relief can be granted without
4  converting the motion to one for summary judgment[.]" Am. Express Travel
5  Related Servs. Co., Inc. v. D & A Corp., No. CV-F-04-6737 OWW/TAG, 2007
6  WL 2462080, at *12 (E.D. Cal. Aug. 28, 2007). However, "[they] may be
7  considered in determining whether . . . amendment [of the Complaint]
8  should be allowed[.]" Id.

### III. Background

Plaintiffs are the "Sacramento Nonprofit Collective, doing business as El Camino Wellness Center" ("El Camino Wellness Center"), which Plaintiffs allege "is a medical cannabis [dispensary] made up of patients which operate pursuant to California Health and Safety Code section 11362.775"; and Ryan Landers, "a medical cannabis patient with a California doctor's recommendation to use medical cannabis." (Compl. ¶¶ 7-8.) Plaintiffs allege that "in late September and early October 2011, the United States Attorneys . . . for each of the four federal districts in California wrote to numerous individuals and entities involved in California's Medical Marijuana program, alleging that the dispensaries, landlords who rent to the dispensaries, patients and other supporting commercial entities, even though they are fully in compliance with state law, are nonetheless in violation of federal law." (Compl. ¶ 17.) Plaintiffs allege that "[s]wift sanctions[, including criminal prosecution, imprisonment, fines, and the forfeiture of assets,] were threatened if those involved did not cease their . . . activities." (Compl. ¶ 17.) Plaintiffs allege that "[i]t is the threatening actions of these . . . [United States Attorneys] in mounting a comprehensive attack—mainly on all the support systems that any legitimate business

needs—that will eviscerate and likely eradicate California's Medical Marijuana Program." (Compl. ¶ 19.)

Plaintiffs allege that in early October 2011, United States Attorney Benjamin Wagner sent one of these letters to El Camino Wellness Center's landlord, who is not a party in this case. (Compl. ¶ 7; Compl. Ex. 1.) The letter, which is attached to Plaintiffs' Complaint as Exhibit 1, states in part:

> This office has received information that [the property occupied by El Camino Wellness Center] is being used to cultivate and/or distribute marijuana in violation of [the Controlled Substances Act], and that you are an owner, or have management or control, of the property. This letter is formal notice that continued use of the property in violation of federal law may result in forfeiture and criminal or civil penalties. . . . Under federal forfeiture law, the "innocent owner" defense is unavailable to those who know or have reason to know of the illegal use of their property. This letter puts you on notice. It is not a defense to claim the property is providing so-called "medical marijuana." Congress has determined that marijuana is a dangerous drug, and that the manufacture and distribution of marijuana are serious crimes. . . . Those who allow their property to be used for such activities do so at their peril.

(Compl. Ex. 1.)

Plaintiffs seek declaratory relief and a permanent injunction that would preclude the United States from enforcing the Controlled Substances Act ("CSA") against Plaintiffs and third parties in California. (Compl. ¶¶ A-F.) Plaintiffs allege in their Complaint that Defendants' enforcement of the CSA "violate[s] the Ninth Amendment," since "[Defendants'] actions threaten" "[t]he plaintiff patients['] . . . fundamental right[] to bodily integrity" and "their right to consult with their doctors about their bodies." (Compl. ¶¶ 31-33.) Plaintiffs allege that Defendants' actions "violate the Tenth

6

Amendment," since Defendants' enforcement of the CSA against California citizens "overturn[s]" California's "primary plenary power to protect the health of its citizens." (Compl. ¶¶ 37-38.) Plaintiffs also allege Defendants' enforcement of the CSA violates the Fourteenth Amendment equal protection clause, since Defendants "unlawfully discriminate[] against medical cannabis patients in California" and have failed to show "a rational basis for [Defendants'] recent effort to end the supply of medical cannabis to qualified patients in California." (Compl. ¶¶ 41-42.) Finally, Plaintiffs allege the doctrines of judicial estoppel and equitable estoppel preclude Defendants from enforcing the CSA, since Defendants' actions are contrary to the enforcement policy Defendants announced in the Ogden Memo. (Compl. ¶¶ 20-28.)

**IV. Discussion**

**A. Commerce Clause**

Defendants argue "Plaintiffs' Commerce Clause . . . claim[] [is] plainly foreclosed by the binding precedent and reasoning of [Gonzales v. Raich ('Raich I'), 545 U.S. 1 (2005)]." (Mot. 9:3-4.) In Raich I, the United States Supreme Court held that the "CSA's categorical prohibition of the manufacture and possession of marijuana as applied to the intrastate manufacture and possession of marijuana for medical purposes pursuant to California law [does not] exceed[] Congress' authority under the Commerce Clause." 545 U.S. at 9, 15. Therefore, Plaintiffs' Commerce Clause claim is foreclosed by United States Supreme Court precedent and is dismissed.

**B. Tenth Amendment**

Defendants argue Plaintiffs' Tenth Amendment claim is "plainly foreclosed by the binding precedent and reasoning of . . . [Raich v. Gonzales ('Raich II'), 500 F.3d 850 (9th Cir. 2007),]" (Mot. 9:3-5), in

which the Ninth Circuit stated that "after [Raich I], it would seem that there can be no Tenth Amendment violation in this case." Raich II, 500 F.3d at 867. Plaintiffs counter that the language in Raich II on which Defendants rely is dicta and the Ninth Circuit "never decided th[e] ultimate issue." (Pls.' Opp'n ("Opp'n") 17:19-20.)

However, it is well-established under United States Supreme Court authority that "[i]f a power is delegated to Congress in the Constitution, the Tenth Amendment expressly disclaims any reservation of that power to the States." New York v. United States, 505 U.S. 144, 156 (1992). Since the power to regulate the intrastate possession, manufacturing, and distribution of marijuana "is delegated to Congress" through the Commerce Clause, Raich I, 545 U.S. at 15, Plaintiffs' allegation that the power to regulate marijuana in California was reserved to California through the Tenth Amendment is foreclosed by United States Supreme Court precedent. New York, 505 U.S. at 156. Therefore, Plaintiffs' Tenth Amendment claim is dismissed.

**C. Ninth Amendment**

Defendants argue Plaintiffs' Ninth Amendment claim should be dismissed since "the Ninth Amendment does not independently secure any judicially-enforceable constitutional rights." (Mot. 9:16-17 (citing Schowengerdt v. United States, 944 F.2d 483, 490 (9th Cir. 1991)).) Further, Defendants argue even if Plaintiffs' Ninth Amendment claim is "construed as a substantive due process claim under the Ninth and Fifth Amendments collectively," the claim is foreclosed by "this Circuit's precedent" in Raich II. (Mot. 9:18-20.) Defendants argue in Raich II the Ninth Circuit "considered the Ninth . . . Amendment[] in addressing whether there is a [fundamental or] substantive due process right to use

marijuana for claimed medical purposes, and it held that no such right exists." (Mot. 9:21-23 (citing Raich II, 500 F.3d at 861-62).)

Plaintiffs counter that in Raich II, "the Ninth Circuit invite[d] [the district courts] to . . . recognize [a fundamental right to use cannabis to alleviate pain and suffering]." (Opp'n 16:8-9, 16:15.) Plaintiffs also argue in footnotes in their opposition brief that seventeen states have enacted laws that legalize the medical use of marijuana and six states have similar legislation pending. (Opp'n 15 n.8 & 16 n.9.)

In the Ninth Circuit's 2007 Raich II decision:

> Raich argue[d] that the last ten years have been characterized by an emerging awareness of marijuana's medical value. [Raich] contend[ed] that the rising number of states that have passed laws that permit medical use of marijuana or recognize its therapeutic value is additional evidence that the right is fundamental. Raich aver[red] that the asserted right in [Raich II] should be protected on the emerging awareness model that the Supreme Court used in Lawrence v. Texas, 539 U.S. [558, 571 (2003).]

500 F.3d at 865. The Ninth Circuit responded to Raich in pertinent part, as follows:

> We agree with Raich that medical and conventional wisdom that recognizes the use of marijuana for medical purposes is gaining traction in the law as well. But that legal recognition has not yet reached the point where a conclusion can be drawn that the right to use medical marijuana is 'fundamental' and 'implicit in the concept of ordered liberty.' For the time being, this issue remains in 'the arena of public debate and legislative action. . . . For now, federal law is blind to the wisdom of a future day when the right to use medical marijuana to alleviate excruciating pain may be deemed fundamental. Although that day has not yet dawned, considering that during the last ten years eleven states have legalized the use of medical marijuana, that day may be upon us sooner than expected. Until that day arrives, federal law does not recognize a fundamental right to use medical marijuana prescribed by a licensed

9

> physician to alleviate excruciating pain and human suffering.

Raich II, 500 F.3d at 866 (internal citations omitted).

Plaintiffs indicate in their argument that the day referenced in Raich II on which a federal court recognizes their asserted fundamental Ninth Amendment right to obtain and use medical marijuana has emerged because the number of jurisdictions that have medical marijuana laws has increased since Raich II was decided. (Opp'n 13:4-17:6.)

> Although the number of jurisdictions that have medical marijuana laws has increased [since Raich II was decided] . . . , the fact remains that the majority of states do not recognize the right to use marijuana for medicinal purposes. Moreover, as to those states that have not legalized medical marijuana, there is no allegation or evidence of a pattern of non-enforcement of laws proscribing its use. Finally—and significantly—it is difficult to reconcile the purported existence of a fundamental right to use marijuana for medical reasons with Congress' pronouncement that "for purposes of the [CSA], marijuana has no currently accepted medical use at all."

Marin Alliance for Med. Marijuana v. Holder, --- F. Supp. 2d ----, 2011 WL 5914031, at *11 (N.D. Cal. Nov. 28, 2011) (quoting United States v. Oakland Cannabis Buyers' Coop., 532 U.S. 483, 491 (2001)); cf. United States v. Fogarty, 692 F.2d 542, 548 (8th Cir. 1982) ("[I]t should be noted that under Section 811 [of the CSA,] Congress has provided a comprehensive reclassification scheme, authorizing the Attorney General to reclassify marijuana in view of new scientific evidence."); Krumm v. Holder, No. CIV 08-1056 JB/WDS, 2009 WL 1563381, at *10 (D.N.M. May 27, 2009) (stating that "a scheduling decision is not a legal determination that an Article III court is qualified to make without an administrative record to review[; and w]hat states attempt to do with their medical

marijuana laws may be helpful to the [Drug Enforcement Agency] in making its decisions, but the states' actions do not eliminate the need for the complex inquiry that Congress has required for drug scheduling changes").

Defendants also argue that "given the posture of this matter—where a marijuana dispensary is challenging a threatened enforcement action against its landlord and not against any individual's marijuana use—Plaintiffs' actual [argument] appears to be that individuals have a right to *access* marijuana for medical purposes via dispensaries such as the El Camino Wellness Center." (Mot. 12:12-15 (emphasis in original).) Defendants argue:

> Such a right would extend well beyond the right considered (only to be rejected) in Raich II, where the court evaluated the right to *use* medical marijuana. The two concepts are not synonymous. Even if there were some narrow right to privately use marijuana for medical purposes – and no court has ever found one – the recognition of such a right would not equate to the right of access to marijuana through the Plaintiff dispensary or the right to immunity from eviction or other measures. Cf. Carey v. Population Servs., 431 U.S. 678, 687 (1977) (distinguishing the right to "use" contraceptives identified in Griswold v. Connecticut, 381 U.S. 479 (1965), from the right of access, though recognizing that subsequent jurisprudence had broadened the specific rights related to childbearing).

(Mot. 12:15-23 (emphasis in original).) Essentially, as the Defendants contend, the referenced right on which Plaintiffs rely is a "right of availability" or "right of access" to a non-federally approved Schedule I controlled substance. Neither Plaintiffs' allegations in their Complaint nor arguments in their opposition brief support Plaintiffs' conclusory contention that these rights exist under federal law.

As the United States Supreme Court stated in United Public Workers of America (C.I.O.) v. Mitchell, 330 U.S. 75, 95-96 (1947):

> The powers granted by the Constitution to the Federal Government are subtracted from the totality of sovereignty originally in the states and the people. Therefore, when objection is made that the exercise of a federal power infringes upon rights reserved by the Ninth . . . Amendment[], the inquiry must be directed toward the granted power under which the action . . . was taken. If granted power is found, necessarily the objection of invasion of . . . rights, reserved by the Ninth . . . Amendment[], must fail.

Since the Supreme Court has held that the CSA's categorical prohibition of the possession, manufacturing, and distribution of marijuana does not exceed Congress' authority under the Commerce Clause, Plaintiffs do not have a viable Ninth Amendment claim. See Raich I, 545 U.S. at 9, 15 (upholding Congress's authority under the Commerce Clause to regulate intrastate possession, manufacturing, and distribution of marijuana). Therefore, Plaintiffs' Ninth Amendment claim is dismissed.

**D. Equal Protection**

Defendants argue Plaintiffs' Fourteenth Amendment claim should be dismissed, since "Plaintiffs have failed to . . . articulat[e] a prima facie equal protection claim." (Mot. 20:10-11.) For purposes of this motion, Plaintiffs' Fourteenth Amendment claim is construed as a Fifth Amendment equal protection claim, since "[t]he Fourteenth Amendment applies to actions by a State." San Francisco Arts & Athletics, Inc. v. U.S. Olympic Comm., 483 U.S. 522, 542 n.21 (1987). "The Fifth Amendment, however, does apply to the Federal Government and contains an equal protection component. Equal protection analysis in the Fifth Amendment area is the same as that under the Fourteenth Amendment." Cecelia Packing Corp. v. U.S. Dep't of Agric., 10 F.3d 616, 623 (9th Cir. 1993) (internal quotation marks and citations omitted).

"Equal protection under the Fifth Amendment . . . entrenches a right to be free from discrimination based on impermissible statutory

12

classifications and other governmental action." Doe v. United States, 419 F.3d 1058, 1062 (9th Cir. 2005) (internal citation omitted). "The first step in equal protection analysis is to identify the [Defendants'] classification of groups. To accomplish this, [Plaintiffs] can show that the law is applied in a discriminatory manner or imposes different burdens on different classes of people." Freeman v. City of Santa Ana, 68 F.3d 1180, 1187 (9th Cir. 1995) (internal quotation marks and citations omitted). To establish selective prosecution based on the classification, Plaintiffs "must show that others similarly situated have not been prosecuted and that the prosecution is based on an impermissible motive." Id. (internal quotation marks and citation omitted). Further, "'the conscious exercise of some selectivity in enforcement is not in itself a federal constitutional violation' so long as 'the selection was [not] deliberately based upon an unjustifiable standard such as race, religion, or other arbitrary classification.'" Bordenkircher v. Hayes, 434 U.S. 357, 364 (1978) (quoting Oyler v. Boles, 368 U.S. 448, 456 (1962)).

Here, Plaintiffs allege that Defendants enforce the CSA against medical marijuana patients and dispensaries in California, but do not enforce it against individuals who receive medical marijuana through federally approved "investigational new drug" ("IND") programs or against medical marijuana patients or dispensaries in Colorado. (Compl. ¶ 41.) Defendants argue that individuals who participate in IND programs are not "similarly situated" to Plaintiffs, since "[t]he CSA expressly allows marijuana use in connection with research projects funded by the federal government." (Mot. 20:13-16 (citing 21 U.S.C. § 823(f).)

1  "A similarly situated offender is one outside the protected
2 class who has committed roughly the same crime under roughly the same
3 circumstances but against whom the law has not been enforced." United
4 States v. Lewis, 517 F.3d 20, 27 (1st Cir. 2008) (citing United States
5 v. Armstrong, 517 U.S. 456, 469 (1996)). Since the possession and
6 distribution of marijuana in conjunction with IND programs does not
7 violate the CSA, participants in IND programs are not similarly situated
8 to Plaintiffs.

9  Defendants also argue Plaintiffs do not have a viable equal
10 protection claim "based on the alleged level of enforcement in
11 [Colorado]." (Mot. 21:1-2.) The judicially noticed documents evince that
12 Defendants have prosecuted medical marijuana patients and dispensaries
13 in Colorado under the CSA, even though the medical marijuana patients
14 and dispensaries claimed to be in compliance with Colorado's medical
15 marijuana law. (United States v. Bartkowicz, No. 1:10-cr-00118-PAB (D.
16 Colo. May 5, 2010), attached as Ex. D to Defs.' Mot.; United States v.
17 Do, No. 1:11-cr-00422-REB (D. Colo. Oct. 13, 2011), attached as Ex. E to
18 Defs.' Mot.) Therefore, Plaintiffs' allegation that Defendants prosecute
19 medical marijuana patients and dispensaries in California but not those
20 in Colorado is belied by evidence showing that Defendants have enforced
21 the CSA against similarly situated individuals in Colorado.

22  Plaintiffs argue in their opposition that Defendants'
23 "briefing regarding equal protection focuses primarily on one component
24 identified in the complaint, relating to selective prosecution[;]"
25 however, "[e]qual protection is a broader concept." (Opp'n at 18 n.10.)
26 Plaintiffs further argue in their opposition that "there is no rational
27 basis to classify cannabis as having no medical value" and "the CSA's
28 prohibition against medical use in compliance with State law is

14

invidious discrimination as applied to patients generally that use cannabis to resolve illnesses and health problems versus patients who use other drugs to do the same thing." (Opp'n 20:24-21:2.) However, Plaintiffs' equal protection challenge to the classification of marijuana as a Schedule I drug under the CSA is foreclosed by Ninth Circuit precedent, since "[t]he constitutionality of marijuana laws has been settled adversely to [Plaintiffs] in this circuit." United States v. Miroyan, 577 F.2d 489, 495 (9th Cir. 1978) (internal quotation marks and citation omitted); see Raich I, 454 U.S. at 9 (upholding federal regulation of intrastate medical marijuana); Fogarty, 692 F.2d at 547 ("[W]e conclude that [defendant] has not met his heavy burden of proving the irrationality of the Schedule I classification of marijuana."). For the stated reasons, Plaintiffs do not have a viable equal protection claim, and this claim is dismissed.

**E. Judicial Estoppel and Equitable Estoppel**

Defendants argue Plaintiffs cannot state viable judicial estoppel and equitable estoppel claims, since these claims rely on the Ogden Memo, which supports neither claim. (Mot. 15:16-18:11.) Both claims are premised on allegations that the Ogden Memo contains the Department of Justice's "pledge[] not to use federal resources against [medical marijuana] patients [who] [are] in compliance with state law" and that Defendants' enforcement of the CSA violates that pledge. (Compl. ¶ 21.) Plaintiffs allege in their judicial estoppel claim that Defendants' "recent crackdown . . . against medical cannabis patients flouts the representations made on the record by the Department of Justice" in the Santa Cruz action about Defendants' non-enforcement policy of the CSA. (Compl. ¶ 22.) Plaintiffs allege in their equitable estoppel claim that "patients[,] their cooperatives[,] and the landlords

15

of these cooperatives . . . reasonably relied on [the Ogden Memo] to operate or continue to operate medical cannabis facilities or, in the case of landlords, to lease their properties . . . to patient cooperatives which were in compliance with California state law," but now Defendants threaten to prosecute them under the CSA. (Compl. ¶ 26.)

Defendants counter: "Plaintiffs are simply incorrect in asserting that the Department has ever issued a promise or guarantee in any prior judicial proceeding that the CSA would never be enforced against marijuana distributers or their landlords simply because they claim to comply with state law." (Mot. 16:17-19; Defs.' Reply 6:20-23.)

> In the . . . Ogden Memo, the Department of Justice communicated to its attorneys that certain marijuana users and providers would be a lower priority for prosecution than others. For example, "[I]ndividuals with cancer or other serious illnesses who use marijuana as part of a recommended treatment regimen consistent with applicable state law, or those caregivers in clear and unambiguous compliance with existing state law who provide such individuals with marijuana," would be a lower priority than "large-scale criminal enterprises, gangs, and cartels." But the Department also made clear that it did not intend to "legalize" marijuana (nor could it). The Ogden Memo states, for instance:
>
> > The Department of Justice is committed to the enforcement of the Controlled Substances Act in all states. This guidance regarding resource allocation does not "legalize" marijuana or provide a legal defense to a violation of federal law, nor is it intended to create any privileges, benefits, or rights, substantive or procedural, enforceable by any individual, party or witness in any administrative, civil, or criminal matter. Nor does clear and unambiguous compliance with state law . . . create a legal defense to a violation of the Controlled Substances Act.
>
> A reasonable person, having read the entirety of the Ogden Memo, could not conclude that the federal government was somehow authorizing the production and consumption of marijuana for medical purposes. Any suggestion to the contrary defies the plain language of the Memo.

16

Mont. Caregivers Ass'n, LLC v. United States, --- F. Supp. 2d ----, 2012 WL 169771, at *1-2 (D. Mont. Jan. 20, 2012) (internal citations omitted.)

Since judicial estoppel does not apply unless "a party's later position [is] 'clearly inconsistent' with its earlier position," and the Ogden Memo does not contain a promise not to enforce the CSA, Defendants' enforcement of the CSA is not inconsistent with the enforcement policy stated in the Ogden Memo. New Hampshire v. Maine, 532 U.S. 742, 750 (2001) (citations omitted). Therefore, Plaintiffs fail to state a viable judicial estoppel claim based on the Ogden Memo.

Plaintiffs argue in their opposition that their judicial estoppel claim is also based on representations that Department of Justice attorneys made at the October 30, 2009 hearing in the Santa Cruz action, which Plaintiffs argue "are far stronger than the actual language in the [Ogden Memo]." (Opp'n 8:25-27.) However, the transcript of that hearing demonstrates that the Department of Justice did not make representations about non-enforcement of the CSA beyond what is stated in the Ogden Memo. (Pls.' RJN Ex. 2.) Therefore, Plaintiffs do not state a viable judicial estoppel claim based on the Ogden Memo or the Department of Justice's representations at the hearing in the Santa Cruz action, and this claim is dismissed.

Nor have Plaintiffs supported any other equitable estoppel contention they assert with factual allegations sufficient to preclude Defendants from enforcing the CSA. Before the government may be equitably estopped, the movant for estoppel "must establish that the government engaged in affirmative misconduct, and that the government's conduct has caused a serious injustice." United States v. Bell, 602 F.3d 1074, 1082 (9th Cir. 2010) (internal quotation marks and citation

1  omitted). Further, "affirmative misconduct requires an affirmative
2  misrepresentation[.]" Id. (internal quotation marks and citation
3  omitted). Plaintiffs have not made this showing. Therefore, Plaintiffs'
4  equitable estoppel claim is not actionable and is dismissed.

5     For the stated reasons, all of Plaintiffs' claims have been
6  dismissed. However, Plaintiffs request leave to file an amended
7  Complaint. (Opp'n 21:16.) This request is denied, since it is evident
8  that Plaintiffs' claims are foreclosed by United States Supreme Court or
9  Ninth Circuit precedent, or other authority cited in this Order.
10 Further, neither Plaintiffs' arguments nor the documents they submitted
11 in support of their claims evince that Plaintiffs could allege an
12 actionable claim even if they were given opportunity to amend their
13 Complaint. Since "any amendment would be futile, there [i]s no need to
14 prolong the litigation by permitting . . . amendment." Lipton v.
15 Pathogenesis Corp., 284 F.3d 1027, 1039 (9th Cir. 2002). Therefore,
16 Plaintiffs' Complaint is dismissed with prejudice, and judgment shall be
17 entered in favor of Defendants.

18 Dated: February 28, 2012

_____
GARLAND E. BURRELL, JR.
United States District Judge